IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION


KATHLEEN BARAN,                          )
                                         )
                Plaintiff,               )
                                         )
        v.                               )    No. 05 C 4792
                                         )
WALSH CONSTRUCTION COMPANY,              )
                                         )
                Defendant.               )


## MEMORANDUM OPINION AND ORDER


Plaintiff Kathleen Baran alleges she was improperly
discharged from her position with defendant Walsh Construction
Company.  She contends she was discriminatorily discharged
because of her gender in violation of Title VII of the Civil
Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., and
because of a real or perceived disability in violation of the
Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et
seq.  She also contends that her discharge was in retaliation for
having complained of the gender and disability discrimination, as
well as retaliation in violation of state law for having filed a
worker's compensation claim.  Additionally, plaintiff alleges a
failure to accommodate her disability.

At a deposition of defendant's Human Resources Director Rhonda Ceska, Ceska had certain emails in her possession that she testified were part of plaintiff's personnel file. It is undisputed that these documents would have been responsive to document requests that plaintiff had made, but had not previously been disclosed nor included in any log of privileged documents. Ceska answered some questions based on the emails and also showed the emails to plaintiff's counsel. Defendant's counsel raised the objection that the documents were protected from discovery by the attorney-client privilege and would not allow plaintiff's counsel to keep a copy of the documents. Plaintiff has moved to compel disclosure of the documents.[1] She contends that they are not privileged documents and, even if they are, the privilege has been waived by the use and disclosure of the documents at the deposition.

The burden is on defendant to establish all the essential elements of the attorney-client privilege, including that it was not waived. <u>United States v. BDO Seidman</u>, 337 F.3d 802, 811 (7th Cir. 2003); <u>United States v. Evans</u>, 113 F.3d 1457, 1461 (7th Cir. 1997); <u>CCC Information Services, Inc. v. Mitchell International,</u>

---

[1]Plaintiff also moves to correct a document (an appendix to her motion to compel) that she filed with the wrong case caption. A corrected copy has already been docketed as item [26] of the docket. Item [23], which apparently is identical to [26] except for the caption, will be stricken from the docket.

Inc., 2006 WL 3486810 *2 (N.D. Ill. Dec. 1, 2006). The elements of the privilege are: "(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived." Evans, 113 F.3d at 1461 (quoting 8 John Henry Wigmore, Evidence in Trials at Common Law § 2292 (John T. McNaughton rev.1961)). "Although the attorney-client privilege generally attaches only to statements made by the client, statements made by the lawyer to the client will be protected in circumstances where those communications rest on confidential information obtained from the client, or where those communications would reveal the substance of a confidential communication by the client." Rehling v. City of Chicago, 207 F.3d 1009, 1019 (7th Cir. 2000) (citation omitted). The privilege is construed narrowly. Evans, 113 F.3d at 1461.

At her deposition, Human Resources Director Ceska brought documents that she indicated were plaintiff's personnel file. Ceska Dep. at 64 ("Q. You reviewed her employment file, didn't you? A. I printed it and brought it with, yes. Q. And you reviewed correspondences from Dave May, isn't that correct? A. If they were in there, yes, I may have."). Ceska could not

answer as to when plaintiff had filed a worker's compensation claim. Plaintiff's counsel suggested Ceska look in the file she had brought to determine the date. Id. at 60. Ceska pulled a letter from Gallagher Bassett, defendant's worker's compensation insurance administrator, but it did not have the information. Ceska then handed plaintiff's counsel all or part of the file she had brought. Id. at 61. Statements at the deposition and an affidavit presently submitted by plaintiff's counsel support that counsel actually read some or all of the documents presently at issue. Plaintiff's counsel noticed communications[2] from Dave May and inquired as to who Dave May was. Ceska responded that he was the Vice President in charge of the Insurance Department. Because she had not previously received these documents, plaintiff's counsel requested copies. Id. Defendant's counsel then interjected that May was an attorney for defendant and therefore any communications between him and other employees would not be provided because privileged. Id. at 62. Plaintiff's counsel argued the communications indicated May was involved in plaintiff's termination, not simply providing legal advice, and therefore the privilege did not apply. Ceska was again questioned and she clarified that May worked for both the Insurance Department and the Legal Department. Id. at 62-63.

---

[2]Later in the deposition, it is revealed that the communications are emails.

- 4 -

Ceska indicated she had reviewed the May emails in preparation for the deposition. Id. at 64-65. At the deposition, defendant's counsel permitted Ceska to review the emails to refresh her memory. Id. at 65. Plaintiff's counsel specifically noted that using the emails to prepare for the deposition would waive any privilege. Id. Questions were then asked based on the emails and Ceska examined the emails when responding. Defendant's counsel, however, continued to invoke the attorney-client privilege. He only permitted Ceska to answer regarding a general description of the subject of the emails. Ceska's responses did not go beyond the type of description that would be provided in a privilege log. Ceska did not disclose the specific content of the emails. Id. at 66-71. At least some of the content, though, had been previously disclosed to plaintiff's counsel when she had plaintiff's personnel file in her hands.

Defendant does not dispute that May works in both the Legal Department and Insurance Department. As to the emails at issue, defendant contends that May was only providing legal advice in his role as in-house counsel for defendant. No affidavit of May is provided. Ceska testified at the deposition and restates in an affidavit that May works in both the Insurance Department and Legal Department. In her affidavit, she refers to him as "general counsel, legal adviser, and in-house attorney in 2003 . . . . At this time he was also in charge of the Walsh

insurance department." Ceska Aff. ¶ 4. While that is consistent
with her deposition testimony, her initial response at the
deposition was simply that he was a Vice President who "heads up"
the Insurance Department. Ceska Dep. at 61. Plaintiff also
provides the deposition testimony of Daniel Walsh, Jr., who is
currently in charge of the Equipment Department. He is the son
of defendant's President and has worked at defendant for 20
years, since he was age 9. He testified that May is in charge of
the Insurance Department, which consists of managing insurance
policies to ensure defendant is adequately insured and handling
worker's compensation claims. Walsh, Jr. Dep. at 14-15. He also
testified that May had previously been a Project Manager. Walsh,
Jr. was unaware that May was a member of the Legal Department.
Id. at 15. When asked who was in charge of the Legal Department,
Walsh Jr. responded that "Larry Kibbon is our CFO." He then
clarified that the legal staff reports to Kibbon, but answered
that Kibbon was not the head of the Legal Department. Id. at 45.

Based on the limited evidence provided, for purposes of
ruling on the pending discovery motion, it is found that May was
an attorney and that he did some work in defendant's Legal
Department, but his primary duties at the relevant time were
performing business functions as the head of the Insurance
Department.

At her deposition, Ceska indicated that the emails were part of plaintiff's personnel file. Presently, defendant clarifies that defendant has a software system that permits authorized employees to pull up all files mentioning a particular person. Ceska used this program to put together the documents she brought to the deposition. The emails were not part of what the company considers to be an employee's personnel file. The emails are, however, part of files for which the Human Resources Director and others at defendant have access. The others that have access are simply described as "certain designated Walsh personnel." Ceska Aff. ¶ 2. It is not important to define what is considered plaintiff's "personnel file." There were document requests for which the emails would have been responsive even if part of plaintiff's personnel file. Nevertheless, defendant did not provide any privilege log nor other indication that certain documents were being withheld as privileged. In her present affidavit, Ceska also states she did not review the emails in preparation for her deposition nor did she use them to refresh her memory at her deposition. Id. ¶ 6. That statement is not accepted because inconsistent with her deposition testimony.

There are essentially two sets of emails. The first set of emails is from September 18-19, 2003 (the "September

emails").[3] The second set runs from November 24 to December 4, 2003 (the "December emails"). In determining whether the emails are protected by the attorney-client privilege, they must be viewed in light of the fact that May's primary duty was as head of the Insurance Department. Thus, unless there is clear indication of a request for legal advice, May's participation should be viewed as acts in his business role as the head of the Insurance Department. Also, even if the emails are found to involve legal advice, defendant has not met its burden of showing that the communications were made and kept in confidence. The communications were available to all persons authorized to access them through defendant's software system. Since defendant has not shown who had such authority, it can not be found that the communications were in confidence.[4] Also, the December emails were initially between May and two others, and eventually copied to 9 additional people as well, including a person outside the company who worked for defendant's worker's compensation

---

[3]Most of the emails in the first set were addressed to multiple people. The first set has two different ending emails because two different people (May and Pete Walsh) provided separate responses to the second last email (the September 18 5:30 p.m. email).

[4]If any of the communications were otherwise found to be protected, defendant would be provided an opportunity to submit additional proof as to who had access. Since none of the documents are found to constitute legal advice, it is unnecessary to provide such an opportunity. Cf. Muro v. Target Corp., 2006 WL 3422181 *6 (N.D. Ill. Nov. 28, 2006).

administrator. Because the communications are not found to involve legal advice, it is unnecessary to determine whether including all these people satisfied the confidentiality or nonwaiver requirement. Cf. Burden-Meeks v. Welch, 319 F.3d 897, 901-02 (7th Cir. 2003) (distributing an otherwise privileged communication within an organization but beyond its top echelon of employees may waive the attorney-client privilege).

The September emails were not initiated by any employee seeking legal advice from May. Instead, the initial email in the string is from May. May lists the subject of the email as "Unreported work comp injury." In the text, May inquires of Equipment Managers Pete Walsh and Bob Andrade: "We have a report from Kathleen Baron(?) that she works at the Chicago Yard and suffered a back injury in a car accident while working. We have no report of such an accident." Sept. 18, 2003 2:16 p.m. email. That should be understood as the head of the Insurance Department inquiring as to whether there was an incident that may be the subject of a worker's compensation claim. There is nothing to indicate that May was acting as in-house counsel preparing or investigating a legal response to a worker's compensation claim. Brief exchanges then follow regarding plaintiff's work status and what claims she may have pending. Andrade inquires as to whether a certain course of action should be pursued. May eventually responds to that query. Sept. 19, 2003 7:15 a.m. email. This

email was only sent to Andrade, but would have been available to anyone authorized to access the company software system that stored such messages.  Also, the fact that Andrade sent a copy of his second last email (Sept. 18, 2003, 5:30 p.m. email) to a clerk in the Insurance Department indicates Andrade considered the communications to be about insurance issues, not legal issues.  While May's ultimate response to Andrade (the Sept. 19, 2003 7:15 a.m. email) could be characterized as containing conclusory legal advice, it is mostly practical advice regarding whether to pursue the possible course of action previously mentioned by Andrade in the Sept. 18, 2003 4:07 p.m. email. May's response does not go beyond the type of advice that a non-attorney insurance administrator could give.  The September emails do not involve legal advice by May in his capacity as a legal advisor.  Defendant must disclose the September emails.

The December emails were initiated by Pete Walsh.  On November 24, 2003, he sends an email to May, with a copy to Timothy Johnson, a Senior Project Manager.  There having been no response, Pete Walsh sends a December 4, 2004 10:01 a.m. followup query to May in which he adds some additional information.  This time, Robert Lang is also copied.  Lang is the Equipment Superintendent.  Both queries concern the work and claims status of plaintiff, with the primary focus being on possibly pending worker's compensation claims.  May responds at 1:58 p.m., listing

4 items. May copies his response to Andrade, a Walsh employee who handles worker's compensation claims, the Insurance Department clerk, an in-house Walsh attorney, and the Gallagher Bassett administrator. Items 1 to 3 simply recite (1) facts about a claim plaintiff filed with defendant, (2) reported information about a claim plaintiff had against a prior employer, and (3) corrects Pete Walsh regarding the injury plaintiff actually claims. The fourth item states a tautology about the union agreement "if" it has a certain provision, leaving it up to Pete Walsh to interpret the agreement. May also leaves it for Pete Walsh to decide whether to make a possible communication to plaintiff. Again, the original queries did not request legal advice and May did not provide legal advice. He did not provide any advice that goes beyond what a non-attorney head of a company insurance department could be expected to provide. Additionally, copying the message to a clerk and another person in the Insurance Department, as well as an outside person that administers worker's compensation claims, supports that May was acting in his business capacity as the head of the Insurance Department, not in his capacity as defendant's legal counsel. After May's email, Andrade and Peter Walsh followed up with comments, including some conclusory advice, which they copied to additional employees in the Human Resources Department. May did

not comment on the additional emails.  Again, since May did not provide legal advice in his capacity as a legal advisor, the December emails are not protected by the attorney-client privilege.  Defendant must disclose the December emails.

Because the documents are not legal advice, it is unnecessary to decide whether the communications lacked confidentiality or the privilege was waived because distributed to too many people, disclosed to plaintiff's attorney at the deposition, or used by Ceska to prepare her deposition testimony and refresh her recollection.[5]

Within one week, defendant shall provide the September and December emails to plaintiff.  By that date, defendant shall also provide a privilege log listing any other documents that were responsive to discovery requests, but withheld based on any privilege.  If there are no additional documents to list on a privilege log, defendant shall so inform plaintiff in writing. Plaintiff is awarded her reasonable costs and expenses incurred in pursuing this motion.  Plaintiff must comply with the procedures set forth in Local Rule 54.3 before submitting any fee petition to the court.

---

[5]On this last contention, see generally Charles Alan Wright & Victor James Gold, Federal Practice & Procedure: Evidence, § 6188 (1993).

This ruling shall not be construed as a ruling on the relevancy or materiality for trial of any of the documents ordered to be produced.

IT IS THEREFORE ORDERED that plaintiff's motion for praecipe [27] is granted in part and denied in part. Docket entry [23] is stricken from the record as an erroneous entry that has already been replaced by docket entry [26]. The Clerk of the Court is directed to delete docket entry [23]. Plaintiff's motion to compel discovery [20] is granted. Within one week, defendant shall provide the "September emails" and "December emails" and a completed privilege log. Plaintiff is awarded her reasonable fees and expenses incurred pursuing the motion to compel. A status hearing will be held on March 28, 2007 at 11:00 a.m.

ENTER:

_William T. Hart_

UNITED STATES DISTRICT JUDGE

DATED: JANUARY 4 , 2007